**GOVERNMENT GUARANTEE FUND OF THE REPUBLIC OF FINLAND, SAASTOPANKKIEN KESKUS-OSAKE-PANKKI (SKOPBANK), 35 ACRES ASSOCIATES, 12 ACRES ASSOCIATES and BENEFORI OY, Plaintiffs**

**v.**

**HYATT CORPORATION, Defendant**

Civil No. 1995-49(M)

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 6, 1998, Filed

Warren B. Cole, Richard Hunter, (Hunter, Colianni, Cole & Turner), *for Plaintiff*

Michael M. Baylson, (Duane, Morris & Heckscher), *for Plaintiff*

Samuel H. Hall, Jr., (Birch, De Jongh, Hindels & Hall), *for Plaintiff*

John Zebedee, (Hymes & Zebedee), *for Defendant*

R. Eric Moore, St. Croix, *for Defendant*

John A. Sopuch, III, (Sopuch, Nouhan & Higgins), *for Defendant*

Claude D. Montgomery, (Phillips, Lytle, Hitchcock, Blaine & Huber), *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

### INTRODUCTION

This matter is before the Court based on a motion of defendant Hyatt Corporation ["Hyatt"] for an order vacating and withdrawing from publication the portion of the Court's May 4, 1998, Memorandum decision finding Hyatt in contempt ["Motion re: Contempt"]. Also pending before the Court is Hyatt's motion for an order vacating in part, or modifying the Court's Order of November 21, 1997 and December 19, 1997, and for a determination that no further sanctions should issue ["Motion re: Sanctions"]. Plaintiffs have not opposed the motions, based on a provision of the settlement agreement between the parties.[1]

The underlying facts of this case have been previously well documented. *See Government Guarantee Fund ["GGF"] v. Hyatt Corp.*, 5 F. Supp. 2d 324, 1998 U.S. Dist. LEXIS 6839, 1998 WL 240391, at *1. On May 4, 1998, the Court, after delineating a series of acts undertaken by Hyatt, made the following conclusion:

> [A]t least as late as January 1998, Hyatt persisted in its obdurate and contumacious refusal to follow the lawful orders of this Court. As of the hearing on January 15, 1998, [the "January 15th Hearing"] Hyatt still had not complied with the Court's Order, issued one year earlier

---

[1] Paragraph 6 of the stipulation of dismissal with prejudice provides:

> Skopbank Parties and Hyatt agree that they will jointly advise the Court that they wish to drop all pending and potential requests for sanctions against any party or its counsel. The Skopbank Parties hereby agree that they have no interest in or desire to pursue any proceedings that may be conducted by this Court in connection with sanctions of any kind in connection [with or] relating to the Management Agreement Action. The Skopbank Parties and their attorneys further represent that they are fully satisfied with the financial accommodations including the payment of attorneys fees and costs made by Hyatt in connection with this Stipulation of Dismissal. Nothing in this paragraph shall preclude counsel for the Skopbank Parties from responding to inquiries from the Court.

on January 28, 1997, to account for all the funds which passed through its hands during the period it continued illegally to remain in possession and continued to act as manager of the hotel in breach of its fiduciary duties to the hotel's owner. Hyatt's performance at the January 15, 1998, hearing evidenced a carefully planned and orchestrated effort to appear to comply with the Order without disclosing what Hyatt apparently considers highly damaging information about its related entities. This deliberate noncompliance and withholding of properly producible information constitutes contempt of this Court.

Hyatt was not content with mere contempt, however. It affirmatively misrepresented what it had produced to this Court. . . . The Court . . . finds that this contumacious performance further constitutes a deliberate attempt to mislead and perpetrate a fraud upon this Court.

. . . Hyatt's earlier and totally inadequate effort at compliance was sanctionable, if not contumacious. Hyatt's effrontery in presenting more of the same in a "new" submission with still no itemization of the benefits Hyatt-related entities received during the illegal holdover, and then misleading its testifying expert and, therefore, the Court about the purpose of the submission, is truly mind-boggling. Whether this effrontery stems from desperation to cover up evidence which might support plaintiffs' claims of improper kickbacks to Hyatt-related entities, which evidence it appears has only recently been pried from Hyatt's iron grasp, remains to be developed at trial. It suffices here to observe that this audacious performance falls squarely within the overall pattern of delay and obstruction the Court has already found to have been demonstrated by Hyatt's conduct in this case.

*GGF v. Hyatt Corp.*, 5 F. Supp. 2d at 330, 1998 WL 240391, at *5-6 (emphasis in original) [the "May 4th Order"]. After the January 15th hearing, but before the Court's May 4th Order was entered, Hyatt submitted a final version of the Accounting Document which greatly advanced its efforts to comply with this Court's Order.

## ANALYSIS

### Motion to Vacate finding of Contempt

Hyatt bases its motion to vacate the finding of contempt generally on two arguments.

First, Hyatt alleges impossibility of the task, the "Herculean" effort required to meet the demands of the Court, and the relatively minor benefit to the Court and plaintiffs in expending this effort. The impossibility argument is premised on the fact that the financial system for the St. John hotel was not integrated with those of the Hyatt corporate offices. Therefore, Hyatt argues, it was impossible for them to comply with this Court's Order of January 28, 1997 ["January 28th Order"], because the documents necessary were in possession of the plaintiffs in storage on St. Croix. As previously pointed out, Hyatt designed this financial system. It therefore may not rely on its deficiencies in defense. Further, the Accounting Document was finally produced. Asking plaintiffs for and obtaining access to the documents removed a major self-imposed obstacle.

Compliance with the Court's January 28th Order was no doubt herculean, and the Court accepts that Hyatt spent approximately $351,000 to produce the Accounting Document. According to Hyatt, the final document revealed only $90,000 of previously undisclosed benefit to Hyatt-related entities, out of accounts payable of approximately $10.6 million. What Hyatt fails to grasp is that the considerations for complying with a court order differ from those for satisfying a materiality test under generally accepted accounting principles.

Second, Hyatt argues that it was subject to an "ever expanding" definition of related entities. Hyatt states that, in agreeing to the definition of related entities as "going up to H Group, Inc. or HV, Inc., two corporate-level parents and . . . every affiliate of those companies," (Jan. 15, 1998 Tr. pp. 185-86.), "this was the first time since the Court's January 28, 1997 Order that the plaintiffs' counsel acceded to any limitations" on the definition. (Mot. re: Contempt at 15.) Be that as it may, Hyatt must have known the meaning of the words "related entities" when it negotiated the use of the term in the Management Agreement with the owners in March of 1990. It

was more than a little disingenuous for Hyatt suddenly to suffer a lapse of memory when the Court adopted the use of the same term in its January 28th Order. The Court's Order, while broad, was not ambiguous, and for all these reasons, the Order manifested the requisite amount of specificity.

The Court finds that the plaintiffs did establish the necessary elements of contempt by clear and convincing evidence. Hyatt violated the Court's January 28th Order. The May 4, 1998, Memorandum and Order, therefore, will not be vacated, nor will it be withdrawn from publication.

Nevertheless, the Court does find that Hyatt and it's present counsel have purged themselves of the contempt and that the imposition of contempt sanctions is not necessary. Hyatt states the matter succinctly:

> Civil contempt is a remedial device imposed to coerce compliance with a court order or to compensate a complainant for losses sustained. *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 129 L. Ed. 2d 642, 114 S. Ct. 2552 (1994). By complying with a court order, a party may purge itself of contempt. *Hicks v. Feiock*, 485 U.S. 624, 99 L. Ed. 2d 721, 108 S. Ct. 1423 (1988); *United States v. Pozsgai*, 999 F.2d 719 (3d Cir. 1993). Indeed, the court *must* afford a contemnor an opportunity to do so. Otherwise, a civil contempt sanction becomes a criminal one. *United Mine Workers, supra; McCarty v. Schneider*, 986 F. Supp. 933, 936 (D.V.I. 1997).

(Mot. re: Contempt at 20.)

■ Counsel's efforts in producing the Reconstructed Cash Flow Report and the Related Party Revenue Report sufficiently purged Hyatt and its present counsel of contempt. Both local counsel and the law firms of Phillips, Lytle, Hitchcock, Blaine & Huber and Sopuch, Nouhan & Higgins have absolved themselves of any liability with their efforts since the January 15th hearing. Phillips Lytle in particular entered an appearance relatively late in the course of this litigation, at a time when its client and then-counsel had developed a pervasive practice and pattern of stonewalling. Phillips Lytle then spent the next half-year playing catchup for the

sins of its predecessor, the law firm of Bickel & Brewer, as well as its client, the Hyatt Corporation.

**Motion for Determination that No Further Sanction Should Issue**

The great majority of discovery abuse occurred during the time period that Bickel & Brewer represented Hyatt. For example, as the Court found in its December 19, 1997 Clarifying Memorandum

> [o]n May 16, 1997, [plaintiffs] filed their motion for contempt, preclusion and other sanctions, together with a 102-page brief in support and a three-volume appendix. A list of plaintiffs' grievances against Hyatt for obstructing discovery included: failure to comply with orders of this Court and the Magistrate Judge, failure to fully respond to interrogatories, misleading representations to this Court, improper blocking of third-party subpoenas, improper assertion of attorney-client privilege and refusal to log documents for which the privilege was asserted, impeding access to electronic data, failure to produce a redaction log, and others.

*GGF v. Hyatt*, 177 F.R.D. 336, 337 (D.V.I. 1997).

In response to a frivolous attempt to amend the pleadings, the Court also issued its own *sua sponte* order to show cause why sanctions should not be imposed. The Court agreed with plaintiffs that

> Hyatt arrogantly treats each Hearing before the Court as if it were nothing more than a dress-rehearsal for the next and each Adjudication by the Court in thorough, detailed and obviously time-consuming Opinions and Orders as if it was nothing more than a preliminary draft proposed by the Court for Hyatt's review and comments, or the brief of another litigant, to be analyzed and somehow distinguished.

> Since it appeared to the Court that Hyatt's latest motion was filed "simply to unreasonably and vexatiously hinder and delay these proceedings in violation of 28 U.S.C. § 1927," it was

> ORDERED that Hyatt shall include in its July 15, 1997 response to the Skopbank Parties' Motion for Contempt and Sanctions its explanation for why its motion to amend its counterclaim and answer does not warrant sanctions.

*Id.*at 338 (citations omitted).

It was also Hyatt's previous counsel, Bickel & Brewer, who filed the Shindler affidavit, which was the subject of the November 21st Order, the December 19th Clarifying Memorandum, and the petition for writ of mandamus filed in the United States Court of Appeals for the Third Circuit. Following several hearings, and after the issues were briefed in the "usual exhaustive and exhausting manner," on November 14, 1997, the Court found that the conduct of both Hyatt and Bickel & Brewer

> demonstrated an overall, pervasive pattern of stonewalling the legitimate discovery efforts of the Skopbank Parties and otherwise delaying and obstructing the orderly process of this litigation.
>
> The Court specifically found that Hyatt's failure to comply with this Court's January 28, 1997, Order requiring it to produce an accounting document (in lieu of an equitable accounting) was sanctionable, if not contumacious; its conduct formed an integral part of the overall pattern of delay and obstruction.
>
> Regarding the Court's sua sponte order, Hyatt and its former counsel . . . were given more than ample opportunity to brief, argue and show cause why the Court should not impose sanctions for their conduct in filing the motion to amend the answer and counterclaim after the Court had ruled that the factual basis asserted by Hyatt could not have rendered the March 1990 Agreements ambiguous or the Skopbank Parties' conduct fraudulent. Since Hyatt and it attorneys utterly failed to justify their actions, this Court found that Hyatt's motion to amend required the imposition of monetary and non-monetary sanctions. This motion was but part and parcel of Hyatt's bad faith in the conduct of this litigation.

*Id.* at 339 (citations omitted).

The Court had previously ordered that monetary sanctions would be imposed following the trial. The settlement of this matter for an undisclosed sum the day before a jury was to be selected has eliminated the need for a trial. A provision of the settlement agreement provided that the Skopbank Parties and their attorneys "are fully satisfied with the financial accommodations including the payment of attorneys fees and costs made by Hyatt in connection with this Stipulation of Dismissal." As such, it would be inappropriate for this Court to award attorneys' fees to the plaintiffs, though it would be within the Court's power. More importantly, whether plaintiffs are satisfied with their monetary settlement has nothing to do with the harm caused to the judicial system by the actions of Hyatt and the law firm of Bickel & Brewer.

In this context, and at this juncture, the statutory based powers of this Court are for the most part not "up to the task." *In re: Tutu Water Wells Contamination Litigation,* 37 V.I. 398, 120 F.3d 368, n.13 (3d Cir. 1997). While Hyatt and Bickel & Brewer so multiplied the proceedings in this case unreasonably and vexatiously as to warrant an award of costs, expenses and attorneys fees under 28 U.S.C. § 1927, the Skopbank Parties have disclaimed such fees in the stipulated settlement. Since the majority of the conduct which this Court finds sanctionable is related to discovery, Federal Rule of Civil Procedure 11 would only award attorneys fees and costs for plaintiffs as a sanction under section (d). Sanctions under Rules 16 are similarly unavailable for the same reason. The Court will therefore rely on its inherent powers and Rule 37.

Federal Rule of Civil Procedure 37 provides sanctions for failure to make disclosure or cooperate in discovery. "Sanctions allowed under Rule 37 are intended to 1) compensate the court and other parties for the added expense caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney." *Wouters v. Martin County, Florida,* 9 F.3d 924, 933 (11th Cir. 1993). Hyatt acknowledges that this Court has the power to impose monetary fines "to compensate *the court* . . . for the added expenses caused by discovery abuses." (Mot. re: Sanctions at 26, 28 (quoting *Mass. School of Law at Andover, Inc. v. Am. Bar Assoc.,* 914 F. Supp. 1172,

1179 (E.D. Pa. 1996) (emphasis added by Hyatt).) The Court is therefore empowered to impose an appropriate monetary fine for the added expense incurred through the willful bad faith of Hyatt and Bickel & Brewer. The Court additionally can rely on its inherent powers to the same end.

In listing the various inherent powers, the United States Court of Appeals for the Third Circuit has noted that the list "include[s] the power to fine." *In re: Tutu Wells*, 120 F.3d at 383. The Court of Appeals noted that "courts have frequently invoked their inherent powers 'to regulate the conduct of the members of the bar as well as to provide tools for docket management.'" *Id.* (citing *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir. 1985 (en banc)). The Supreme Court has noted that the judicial system's various inherent powers are necessary to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. Nasco*, 501 U.S. 32, 42, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)). Hyatt itself, as has previously been noted, has acknowledged the power of the Court to impose monetary fines, not only explicitly in the context of Rule 37 ("to compensate *the court* . . . for the added expenses caused by discovery abuses"), but also implicitly in the context of the Court's inherent powers. (Mot. re: Sanctions at 26, 28.)

The acts of Hyatt and its original counsel, conducted in bad faith, unquestionably prevented or impeded this Court's ability expeditiously to dispose of this case, as well as the other cases on the Court's docket. The judicial resources of the United States were frittered away doing battle with a litigant and its attorneys, who refused to comply with applicable rules of procedure and the orders of the this Court. A monetary sanction in the form of a fine payable to the District Court in an amount to be determined will be entered against Hyatt.

█ Because the firm of Bickel & Brewer, on the other hand, has not had the opportunity to brief this issue since its withdrawal from the case, the firm will be ordered to show cause why monetary sanctions should not issue. Following this hearing an Order will issue setting the fines for both Hyatt and Bickel & Brewer.

## The Shindler Issue

Hyatt has also moved to vacate in part or modify the Court's Orders of November 21 and December 19, 1997, to "remove any preclusive effect or finding of waiver" arising out of this Court's order to produce the Shindler and Geoga documents. (Mot. re: Sanctions at 3.) This Court had ruled that Hyatt waived the attorney-client privilege relating to these documents by producing a declaration of its attorney, Michael Shindler, in opposition to plaintiffs' summary judgment motion on the very same issues Hyatt claimed were protected by the privilege. Claiming this was error, Hyatt petitioned the United States Court of Appeals for the Third Circuit to correct the error through mandamus. Hyatt's petition was denied without opinion, after briefing and argument. As a practical matter, the stipulation of settlement would ordinarily be the end of the issue, since the Skopbank Parties have agreed to return the produced documents. Before settlement, however, the Court had permitted the intervention of a plaintiff pursuing similar claims against Hyatt in the United States District Court for the District of Hawaii, that case being *Grand Wailea Co. v. The Hyatt Corporation*, Civil No. 95-00350-HG.

■ Hyatt's fears are unfounded. The Shindler and Geoga documents were produced in this case per court order. They similarly have been produced to Grand Wailea pursuant to this Court's order, subject to any confidentiality agreement that has been entered in this case. It will be up to the Hawaiian District Court to determine whether and how these documents will be used. As for other litigants who may seek to discover these documents, this Court agrees with Hyatt that the compelled production does not constitute a waiver for other lawsuits. The attorney client privilege is not destroyed by disclosure of protected information to an outside party which is done only under the compulsion of a court order. (Mot. re: Sanctions at 8 (*citing Republic of the Philippines v. Westinghouse Electric*, 132 F.R.D. 384 (D.N.J. 1990)).) Similarly, production of privileged materials in one action pursuant to a court order does not constitute a waiver of the privilege for other lawsuits. (Mot. re: Sanctions at 9 (*citing Schaffer v. Below*, 278 F.2d 619, 628 (3d Cir. 1960).)

For all of these reasons, there is no good and sound reason to vacate or modify the Orders of November 21 and December 19 regarding waiver of the attorney-client privilege.

## CONCLUSION

The motions will be denied. Although the Court has found that Hyatt and its present counsel have purged themselves of contempt for noncompliance with the January 28th Order, none of the Court's prior opinions or orders will be vacated or modified. Hyatt itself will be fined under Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent power. The law firm of Bickel & Brewer will be ordered to show cause why it should not be sanctioned.

ENTERED this 6th day of August, 1998.

### ORDER

For the reasons set forth in the foregoing Memorandum, it is hereby

ORDERED that the law firm of Bickel & Brewer show cause why sanctions should not issue against the firm, with any response due three weeks from the date of this Order. It is further

ORDERED that the motion to vacate the May 4, 1998, Memorandum and Order and the motion to vacate the November 21 and December 19, 1997, Memoranda and Orders are DENIED.

ENTERED this 6th day of August, 1998.