**WAYNE L. SPRAUVE, Plaintiff**

**v.**

**ARNOLD MASTROMONICO and MARIA MASTROMONICO**

Civ. No. 1999-002

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 12, 1999

WAYNE L. SPRAUVE, ESQ., St. Thomas, U.S.V.I., *for plaintiff*

JOHN H. BENHAM, ESQ., St. Thomas, U.S.V.I., *for defendants*

MOORE, *Chief Judge*

### MEMORANDUM

This Court rendered a decision from the bench on July 21, 1999, which expelled plaintiff Wayne L. Sprauve, Esquire ["plaintiff" or "Sprauve"], from practice before the District Court of the Virgin Islands for numerous violations of the rules of professional conduct. This Memorandum recounts the events in this case and memorializes the reasons for the plaintiff's disbarment.

### FACTUAL SUMMARY

#### A. The Underlying Dispute and Actions

In April 1998, Sprauve signed a contract to lease Parcel No. 2-37,

403

St. Joseph and Rosendahl, St. Thomas, from Arnold and Maria Mastromonico ["defendants" or "Mastromonicos"] for two years. Under this agreement, the plaintiff could purchase the premises for $330,000 minus several deposit payments and forty percent of rents paid. (See Compl., Terr. Ct. Civ. No. 866/98, Ex. A.) Rent for the premises was $2,500 per month. After paying rent for the first month of occupancy, Sprauve took possession of the property on May 1, 1998.

Seven months later, on December 1, 1998, Sprauve filed suit pro se against the Mastromonicos in the Territorial Court of the Virgin Islands. In his complaint, the plaintiff alleged that the defendants had breached their duties as landlords by failing to place his name on the insurance policy for the property as a loss payee and failing to credit him for latent defects in the electrical system on the premises. He also claimed that the defendants had attempted to abrogate the contract, and sought specific performance of the agreement as well as unspecified damages for the defendants' actions or omissions. (See id.)

On January 7, 1999, the Mastromonicos served Sprauve with a Notice of Default for nonpayment of rents and expenses due under the lease agreement. The following day, they removed Sprauve's suit to District Court and filed their answer to his complaint as well as counterclaims against him. Among other things, the defendants sought to eject the plaintiff from the leased premises and to gain a judgment for unpaid rents. (See Answer, Civ. No. 1999-002, at 5-8.) Sprauve has never answered these counterclaims or sought leave to lodge an answer with the Court.

## B. The Discovery Phase at the District Court

On January 25, 1999, the magistrate judge ordered the parties' representatives to appear at a scheduling conference on February 11th. (See Order, Jan. 25, 1999, at 1.) Even though the Mastromonicos moved for an entry of default on their counterclaims against Sprauve on February 8th, the plaintiff pro se failed to appear at the February 11th conference.[1] Afterwards, the mag-

---

[1] The Court has not considered Sprauve's failure to comply with its scheduling order as grounds for sanctions in this case. (See Order, June 2, 1999, at 1-2.) Attorney Sprauve

istrate judge set a new conference for April 20th and directed the Clerk to enter default against the plaintiff on the defendants' counterclaims. (*See* Order, Feb. 11, 1999, at 1.) The Clerk of Court entered default against Sprauve on February 17th.

Two days later, Sprauve filed two motions. First, the plaintiff filed a motion to set aside the entry of default, in which he represented that he did not know about the February 11th conference or the defendants' application for entry of default. (*See* Pl.'s Mot. to Set Aside, Feb. 19, 1999, at 1.)[2] Second, he moved to dismiss this case on the ground that it did not involve a sum sufficient for the exercise of diversity jurisdiction, which motion was more in the nature of a motion to remand. (*See* Pl.'s Mot. to Dismiss, Feb. 19, 1999, at 1.)

Two weeks after Sprauve filed his motions with the Court, the Mastromonicos served a deposition notice on Sprauve by mail, informing him a full month in advance that they would take his deposition on April 8, 1999. (*See* Notice of Oral Dep., Mar. 5, 1999.) On April 7th, one day before the deposition was scheduled to take place, Sprauve sent the following request by facsimile to the defendants' attorneys:

> I would respectfully request that the deposition you had scheduled in the *Sprauve v. Mastromonico* matter be postponed until sometime in May as a result of my schedule. I was subpoenaed in a criminal matter in the Territorial Court and I do not know how many days it

---

once failed to appear before the Court for sentencing of his client upon a guilty plea because he had moved for a continuance and had assumed, without checking, that it would be granted. The Court ordered Attorney Sprauve to show cause why he should not be sanctioned for his failure to appear, advised him of the possible sanctions that he faced, gave him an opportunity to explain why he should not be sanctioned, and, finding his explanation unpersuasive, suspended him from practice in the District Court for one week. *See* Order, *United States v. Hughes*, Crim. No. 1996-243 (D.V.I. St. Thomas & St. John div. Oct. 27, 1997).

[2] These representations form the basis for the first allegation in the Court's June 2nd Order to Show Cause. *See infra* pages 19-20. Attorney Sprauve also filed an affidavit with the Court in which he swore that he "NEVER received any notification whatsoever that there was a filing made to move this matter to the District Court." (*See* Aff. of Wayne L. Sprauve, Feb. 19, 1999, at 1 (emphasis in original).)

will last. This has served to further compound my scheduling requirements.[3]

Opposing counsel responded that they could not continue the deposition for a month without a protective order, but might agree to a short postponement.[4] Sprauve did not seek or obtain a protective order before failing to appear at his deposition on April 8th.[5] He finally moved for a protective order on the following afternoon. In this motion, Sprauve represented to the Court what he had told opposing counsel, namely, that he could not attend his deposition on April 8th because he had been subpoenaed.[6]

On April 20th, Sprauve attended a scheduling conference by telephone during which the magistrate judge ordered him to attend his deposition rescheduled for April 28th. (*See* Order, Apr. 20, 1999, at 1.) Once again, Sprauve waited until the day before his deposition — and this time, after business hours — before asking the Mastromonicos' attorneys to reschedule his deposition:

> I am scheduled to be prepared to move forward tomorrow (just found out this afternoon) on a TRO which I filed in the Territorial Court in a matter which has its origin some eight (8) years ago. Accordingly, I will be unable to attend the deposition. Please accept my apology and let me know when would be an appropriate time to proceed. I will be off-island from the 5th to the 17 [sic]; however, if

---

[3] (*See* Defs.' Submission Regarding Pl.'s Misconduct, June 2, 1999 ["Defs.' Sub."], Ex. C (Letter from Wayne L. Sprauve to Frederick G. Watts, counsel for defendants (Apr. 7, 1999)).)

[4] (*See id.*, Ex. D (Letter from Frederick G. Watts to Wayne L. Sprauve (Apr. 7, 1999)) (("[W]e cannot delay resolution of this situation while you continue in default of your obligations to our client. We might consider a delay of a few days but cannot agree to the month-long delay you seek. Absent a protective order or an agreement for a very short-term postponement, we must tell you that we intend to go forward with your deposition tomorrow . . . .").)

[5] This failure to appear forms the basis for the second allegation in the Court's June 2nd Order to Show Cause. *See infra* pages 20-21.

[6] (*See* Pl.'s Mot. for Protective Order, Apr. 9, 1999, at 1 (requesting order "as a result of his unavailability").) This representation forms the basis for the third allegation in the Court's June 2nd Order to Show Cause. *See infra* pages 21-22. The magistrate judge reserved ruling on the plaintiff's request for a protective order. (*See* Order, May 26, 1999, at 1.)

we can do it before the 5th, subject to no trial conflicts, I will be ever so happy to accommodate you.[7]

When Sprauve did not appear at his deposition on April 28,[8] the defendants served a third deposition notice on the plaintiff by mail. (*See* Defs.' Second Am. Notice of Oral Dep., Apr. 28, 1999, at 1-3.) As required by Local Rule of Civil Procedure 56.1, the defendants also advised the Court that they had served the plaintiff with a motion for summary judgment. (*See* Defs.' Notice of Mot., Apr. 29, 1999, at 1.)

On May 4, 1999, plaintiff finally appeared and allowed his deposition to be taken. During his testimony, Sprauve *repeated under oath* what he previously had suggested to opposing counsel in his April 7th letter and intimated to the Court in his April 9th motion for a protective order, namely, that he was in Territorial Court on April 8th pursuant to a subpoena:

Q. And what date were you to appear at the trial?
A. It was the same date that we had the deposition scheduled.
Q. And it was — was it scheduled then for April 8th?
A. Yes.
. . . .
Q. And it's your testimony that you were in fact required to be in court on that morning?
A. Yes.
Q. Did you appear that day in court?
A. Yes, I did.[9] Attorney Sprauve also testified that he did not attend the deposition scheduled for April 28th because he was pursuing a civil matter that took precedence:

Because I had — this is a major case. I needed to get my client as well as the necessary people together in the event that the court had some space and could hear us on that

---

[7] (*See* Defs.' Sub., June 2, 1999, Ex. F (Letter from Wayne L. Sprauve to Frederick G. Watts (Apr. 27, 1999)).)

[8] This failure to appear forms the basis for the fourth allegation in the Court's June 2nd Order to Show Cause. *See infra* pages 22-24.

[9] (*See* Dep. of Wayne L. Sprauve, May 4, 1999, at 8-9.) This representation forms the basis for the fifth allegation in the Court's June 2nd Order to Show Cause. *See infra* pages 24-25.

issue. And I made a decision on my own that that was more — that had greater priority than attending this deposition.[10]

The next day, the magistrate judge scheduled a hearing before the district judge for May 21, 1999, on Sprauve's motion to set aside the entry of default, as well as his motion to dismiss. (*See* Order, May 5, 1999, at 1.)

## C. The Pre-trial Hearings Phase

Although oral argument had been scheduled on Sprauve's motions six weeks in advance, the plaintiff neither appeared at the May 21st hearing nor moved for a continuance.[11] At this hearing, the defendants first brought Attorney Sprauve's conduct in this litigation to the Court's attention. Noting that Sprauve was not present to argue his motion to set aside the default, the Court took it under advisement. The Court denied Sprauve's motion to dismiss based on the pleadings, including the plaintiff's demand for specific performance of a $330,000 lease and purchase option agreement, which conclusively established that this dispute satisfied the amount-in-controversy requirement for diversity jurisdiction. (*See* Order, May 21, 1999, at 1-2.) After the defendants informed the Court that the plaintiff had filed no response to their motion for summary judgment, the Court allowed defendants leave to file their unopposed motion[12] and set argument for 9:30 a.m. on May 28th.

On Wednesday, May 26, 1999, Sprauve gave the first hint that he had been under a doctor's care by requesting that the Court continue the summary judgment argument scheduled for May

---

[10] (*See* Dep. of Wayne L. Sprauve, May 4, 1999, at 12.)

[11] This failure to appear forms the basis for the sixth allegation in the Court's June 2nd Order to Show Cause. *See infra* note 28 and accompanying text.

[12] Under LRCi 56.1, any party who intends to file a dispositive motion with the District Court must serve the opposing party with the motion, filing *only* a corresponding notice of service with the Court, with a courtesy copy to the judge's law clerk. Likewise, the opposing party must serve any response upon the movant and file *only* a notice of service with the Court and its law clerk. *See* LRCi 56.1(a-b). This rule contemplates that the movant will file the motion, response, and reply with the Court at one time. Consequently, the defendants required leave of Court to file their unopposed motion for summary judgment.

28th, because he "ha[d] been receiving medical attention . . . and ha[d] an appointment scheduled for [that] morning." (*See* Pl.'s Mot. to Continue Arg. for Summ. J., May 26, 1999, at 1.)[13] Observing that the plaintiff had assured the magistrate judge in a letter on May 26th that he had relinquished only "some aspect[s] of his practice" as a result of his malady and had developed settlement concepts for this case during his illness, the Court denied his motion to continue the argument scheduled for May 28th. (*See* Order, May 27, 1999, at 1.)[14]

In their motion for summary judgment, the defendants argued that Attorney Sprauve's conduct in this case "provide[d] additional bases for the entry of judgment in [their] favor." (*See* Defs.' Mot. for Summ. J., May 24, 1999, at 15-20.) At the May 28th hearing on this motion, which Sprauve did not attend, the Court granted the defendants summary judgment on the plaintiff's complaint based on the uncontroverted evidence before it,[15] and took the question of costs and fees under advisement. Directing the defen-

---

[13] The plaintiff's motion included a note from Dr. Stephen Okiye, M.D., which stated that "*Wayne L. Sprauve* has been under my medical care from *May 03, 1999 and will be until further notice.* I have advised him to discontinue work for medical reasons until he is physically capable of returning to work." (*See* Pl.'s Mot. to Continue Arg. for Summ. J., May 26, 1999, Ex. A (emphasis in original)).

[14] Upon being informed by telephone of the Court's decision, Sprauve responded that he would not appear before the Court on May 28th because he had strep throat. Telephone conversation with Wayne L. Sprauve, St. Thomas, U.S.V.I. (May 27, 1999).

[15] Briefly, the defendants' motion for summary judgment established through the affidavit of defendant Arnold Mastromonico that Sprauve had made incomplete or late down payments and rent payments totaling $20,602.32, but had failed to pay $12,085.80 in rent and other expenses due by December 1, 1998. (*See* Defs.' Mot. for Summ. J., at 3-5.) This affidavit stated that the defendants had given the plaintiff a Notice of Default and an opportunity to cure his defaults, which he failed to do, and further noted that the unequivocal language of the lease agreement required the plaintiff to purchase insurance and make repairs to the premises. According to defendant Arnold Mastromonico, Sprauve never bought insurance for the property. (*See id.* at 8-9.) Sprauve has never attempted to present evidence to controvert these sworn statements.

Based on the record and the defendants' evidence, the Court ruled that the plaintiff had breached the lease agreement by failing to cure his defaults after due notice. Under V.I. CODE ANN. tit. 28, § 281 and the agreement itself, the defendants were entitled to suspend their performance, eject the plaintiff and repossess the property, gain damages in the amount of unpaid rent, and treat the $330,000 purchase option as void. Consequently, the Court awarded summary judgment to the defendants on the plaintiff's complaint. In doing so, the Court found that it would have awarded summary judgment to defendants on the complaint and their counterclaims even if the plaintiff had provided sufficient reason to vacate the entry of default. (*See* Findings of Fact and Conclusions of Law, June 1, 1999, at 1-4.)

dants to prepare a draft form of judgment, the Court also requested that they supplement their motion for summary judgment with a detailed submission regarding the grounds for sanctions against the plaintiff.[16]

On June 1st, the Court entered judgment against Sprauve in the amount of $34,773.92 plus interest, and ordered him to vacate the premises owned by the defendants on June 15, 1999. (*See* Order, June 1, 1999, at 1-2.) That same day, Sprauve asked the Court to reconsider its decisions to deny his motions to dismiss and to continue the summary judgment argument. This motion for reconsideration included a note from Dr. Cresencia Dy, M.D., which stated that the plaintiff would be "able to return to work on May 20, 1999." (*See* Pl.'s Mot. for Recons., June 1, 1999, Ex. B (note dated May 12, 1999).) Observing that "[a] motion for reconsideration serves to 'correct manifest errors of law or fact or to present newly discovered evidence,'"[17] the Court denied this motion because it contained no "newly discovered" evidence and provided no legal grounds to show that the Court erred in denying his previous motions. (*See* Order, June 2, 1999, at 1-2.)

Moreover, Dr. Dy's note thoroughly undermined Sprauve's contention that he had been too ill to attend the court hearings and arguments scheduled for May 21st and May 28th, since it stated that he would be well enough to return to work the day before the argument on his motion to dismiss took place, (*see id.*), and the plaintiff had not adduced proof that he could not attend to work after May 20th. Mindful of the delay that the plaintiff apparently had caused in this case, the Court declined to vacate its order refusing to postpone the summary judgment argument per the plaintiff's request because he still had "yet to explain why his doctor's appointment could not be rescheduled so that he might have attended the argument held on May 28th." (*See id.* at 2.) Most significantly, the plaintiff never has asked the Court to reconsider

---

[16] The Court delayed imposing sanctions against Sprauve and requested a detailed submission from the defendants to give the plaintiff an opportunity to acquaint himself with the defendants' allegations and develop his response thereto, as due process demands. *See infra* note 23.

[17] *See Bluebeard's Castle, Inc. v. Delmar Mktg., Inc.*, 32 V.I. 278, 284 (D.V.I. 1995) (quoting *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

the merits of his complaint for specific performance, his contention that the defendants breached their duties as landlords, or the defendants' motion for summary judgment. Indeed, his pleadings in the District Court have barely addressed the merits of this case at all.[18]

## D. The Post-Judgment Phase

### 1. The Show Cause Order

After the Court denied Sprauve's motion for reconsideration, it adopted the defendants' proposed Show Cause Order on June 2, 1999. This Order directed the plaintiff to appear before the Court on July 16th at 3:00 p.m. and explain why he should not be held in contempt or face sanctions for six specific instances of alleged misconduct relating to his behavior in this case.[19]

During the next two weeks, Sprauve filed numerous motions seeking to remand the matter back to Territorial Court, to strike the defendants' proposed findings and judgment, and to have the undersigned judge recuse himself.[20] He then appealed the judgment in this case to the Court of Appeals for the Third Circuit and moved in this Court to stay the execution of the judgment pending appeal. (*See* Pl.'s Notice of Appeal, June 10, 1999; Pl.'s Mot. to Stay J., June 10, 1999.) As the undersigned judge was not available to consider Sprauve's motion to stay,[21] District Judge Raymond L. Finch reviewed and denied the plaintiff's motion on the merits.

---

[18] Out of the thirteen pleadings filed by Sprauve to date, only two touch upon the merits of this case. (*See* Pl.'s Mot. to Dismiss, Feb. 19, 1999 (arguing that dispute over enforceability of lease and purchase agreement did not satisfy amount-in-controversy requirement for diversity jurisdiction); Pl.'s Mot. to Remand, June 4, 1999 (same).) Nonetheless, the plaintiff has castigated opposing counsel for avoiding the facts and law of the case: "Watts and Benham have to learn that the day of the Great White Hope is long gone, and that the merits of the issue are to be the focal points of the debate." (*See* Pl.'s Opp'n to Defs.' Mot. to Appoint Special Prosec., July 16, 1999, at 1.)

[19] (*See* Order, June 2, 1999 [hereinafter "Show Cause Order"]); *see also infra* pages 18-25 (discussing contents of Show Cause Order in greater detail at conclusion of procedural history of this matter).

[20] (*See* Pl.'s Mot. to Remand, June 4, 1999; Pl.'s Mot. to Strike, June 4, 1999; Pl.'s Req. for Recusal of Trial Judge, June 4, 1999.)

[21] Less than five hours after the plaintiff filed his motion, the Court's law clerk notified him that the undersigned judge would not be able to respond to his request, and suggested that he seek a stay from another judicial officer. (*See* Pl.'s Supp. Mot. to Stay J., June 14, 1999, Ex. D (Letter from Joshua S. Millard to Wayne L. Sprauve (June 10, 1999)).)

(*See* Order, June 15, 1999, at 1.) On June 17th, the defendants obtained writs of assistance and execution from the Clerk of Court to enforce the June 1st judgment, and later evicted Sprauve from the premises.

Several weeks later, this Court denied the rest of the motions advanced by Sprauve because they "neither raise[d] a meritorious point of law nor add[ed] to the known facts, and in *any* event, the plaintiff ha[d] appealed the Court's judgment to the Court of Appeals for the Third Circuit, depriving this tribunal of jurisdiction" over the merits of the action.[22] It also denied a motion for appointment of a special prosecutor advanced by the defendants, clarifying that Sprauve could face sanctions "for his conduct in th[is] case, such as suspension or disbarment from the Bar of the District Court," but "the Court d[id] not contemplate conducting a criminal contempt hearing on July 16, 1999."[23]

---

[22] (*See* Order Denying Pl.'s Mot. to Remand and Mot. to Strike, July 14, 1999, at 2.) The Court denied plaintiff's Request for Recusal of Trial Judge as unfounded, declaring that the Court "harbors no bias or prejudice whatsoever toward the plaintiff, and welcomes 'aggressive, zealous advocacy' from any and all attorneys, but cannot countenance noncompliance with the rules of the Court and the rules of professional responsibility." It observed that "the plaintiff previously has not asked the undersigned judge to recuse himself on account of bias or prejudice from any case in which the plaintiff appeared as a party or attorney, and it appears that he has done so in this litigation only because he is dissatisfied with its outcome." (*See* Order Denying Pl.'s Req. for Recusal of Trial Judge, July 15, 1999, at 1-2.)

Contrary to the plaintiff's desperate, baseless accusations, the undersigned judge consistently has imposed sanctions on counsel who fail to uphold their responsibilities as officers of the Court, irrespective of gender, race, religion, creed, sexual preference, or place of birth. *See, e.g., Government Guarantee Fund of Republic of Finland v. Hyatt Corp.,* 39 V.I. 328, 182 F.R.D. 182 (D.V.I. 1998) (multinational corporation held in contempt and fined and partner in large international law firm assessed substantial monetary sanction for refusal to comply with court order); Order, *Griffith v. HOVIC,* Civ. No. 1995-104 (D.V.I. St. Croix div. Oct. 1, 1998) (imposing sanctions on multiple-attorney firm for apparent bad faith in seeking to prevent the Court from considering relevant case law); Order, *Vitale v. Triad Partnership, Ltd.,* Civ. No. 1996-079 (D.V.I. St. Thomas & St. John div. Sept. 4, 1998) (imposing sanctions on sole practitioner who failed to keep Court advised of his whereabouts during jury deliberations, thus delaying jury's announcement and Court's acceptance of verdict).

[23] (*See* Order Denying Defs.' Mot. for Appointment of Special Prosec., July 14, 1999, at 1-2.) While suspension or disbarment are obvious sanctions for serious professional misconduct, the Court specifically advised the plaintiff of the possibility of suspension or disbarment in its Order Denying Appointment of Special Prosecutor and its subsequent Civil Contempt and Arrest Order. Sprauve thus had advance notice of the allegations against him and the consequences if those allegations were determined to be well-founded. *See In re Ruffalo,* 390 U.S. 544, 550, 20 L. Ed. 2d 117, 88 S. Ct. 1222 (1968) (concluding that attorney subject to serious sanctions was entitled to notice that his conduct might constitute a disbarment offense before the hearing took place); *Prosser v.*

## 2. The Plaintiff's Arrest for Contempt

As previously noted, this tribunal ordered plaintiff Wayne L. Sprauve, Esquire, a member of the Bar of the District Court of the Virgin Islands, to appear at the Federal Building on St. Thomas on July 16, 1999, at 3:00 p.m., and show cause why the Court should not hold him in contempt or impose sanctions upon him for six alleged instances of professional misconduct in this case. Despite having more than six weeks to prepare, and having submitted multiple motions to this Court during that time, Sprauve filed a motion on the morning of July 16th to postpone the Show Cause hearing scheduled for that afternoon because he had to "tak[e] care of a personal and family matter." (*See* Pl.'s Mot. to Continue, July 16, 1999, at 1.) He then left St. Thomas without bothering to find out if the Court would excuse his appearance.[24] As Sprauve knew that he faced serious allegations at this long-scheduled hearing, the Court concluded that his sudden departure from St. Thomas was "completely unreasonable and unjustified," and denied his motion to continue.[25]

---

*Prosser*, 1999 U.S. App. LEXIS 17937, No. 98-6707, 1999 WL 553844, at *3 (3d Cir. July 30, 1999) ("Fundamental fairness and the established law of this circuit require that a court afford the parties due process by giving them notice and an opportunity to be heard before imposing sanctions or imposing damages. . . . Due process requires that the parties have sufficient notice of the form of the sanctions being considered by the court because the issues that must be addressed may differ depending on the form."); *see also Castillo v. St. Paul Fire & Marine Ins. Co.*, 828 F. Supp. 594, 598-99 (C.D. Ill. 1992). As with the Court's interest in the rules of professional conduct, however, Attorney Sprauve appears to have misinterpreted this concern for the rules of due process as a personal attack or an indication that the Court had already found against him. (*See* Tr., July 19, 1999, at 28 ("I notice the orders speak as though I've already been convicted or accused or found guilty of some heinous crime.").)

Whatever the plaintiff's position may be now that the Court has judged him unable to execute his duties as an officer of this tribunal, Sprauve had no question about the possible grounds for sanctions and the form that those sanctions could take either before or during the hearing on July 19, 1999. None of the nine pleadings that he filed between June 2nd and the Show Cause hearing petitioned the Court to supplement or clarify the scope of factual issues or sanctions. Sprauve answered each issue raised in the Show Cause Order, (*see id.* at 5-23), and offered to withdraw from practice before the District Court. (*See id.* at 29.) He knew the issues, and he knew the stakes.

[24] Unable to reach Sprauve at his office, the Court's deputy clerk called the plaintiff's mother to inform her that the Court had denied her son's motion to continue, and would require his presence at the Show Cause hearing scheduled for that afternoon. The plaintiff's mother responded that Sprauve already had left St. Thomas earlier that morning. (*See* Order Denying Pl.'s Mot. to Continue, July 16, 1999, at 1 n.1.)

[25] (See id. at 2.)

The Show Cause hearing commenced as scheduled at 3:00 p.m. on July 16th, and Sprauve did not appear. The Mastromonicos' attorney then advised that the Court of Appeals had dismissed the plaintiff's appeal for failure to prosecute.[26] Since the record indisputably demonstrated that Sprauve was aware of the Order requiring him to appear in District Court on July 16, 1999, at 3:00 p.m., the Court found Sprauve in civil contempt for willfully failing to comply with that Order and thereby obstructing the administration of justice. Accordingly, the Court determined that the plaintiff should be detained until he purged himself of contempt by complying with the Show Cause Order, and ordered the United States Marshal's Service to arrest him "herewith and incarcerate him until such time as he decides to comply with the Court's Order of June 2, 1999, by explaining . . . why he should not be held in contempt and face other sanctions, including disbarment, for six particular allegations of professional misconduct in the above-captioned case."[27]

### 3. The Show Cause Hearing

The United States Marshal took Sprauve into custody when he finally appeared at the St. Thomas Federal Building on Monday morning, July 19, 1999. In spite of the plaintiff's apparent lack of regard for the Court's convenience or schedule, the Court nevertheless interrupted a jury trial that same morning to hear his response to the Show Cause Order. It gave the plaintiff ample time to respond to each allegation in the Show Cause Order in any

---

[26] (See Order, *Sprauve v. Mastromonico*, No. 99-3499 (3d Cir. July 16, 1999).) Sprauve later explained to the Court that he had paid the requisite filing fee, and would petition the Court of Appeals to reconsider its dismissal of his appeal. (See Tr., July 19, 1999, at 30.)

[27] (See Civil Contempt and Arrest Order, July 16, 1999, at 2-3.) The Court found that civil arrest and incarceration were appropriate because Sprauve's conduct on July 16, 1999, satisfied "the requisites of criminal contempt." (See *id.* at 2 (citing *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 897, 901 (3d Cir. 1992) ("[A] lawyer's repeated failure to appear before the court when ordered to do so dilutes the court's authority . . . refusal to obey an order to appear may be punished through the imposition of criminal contempt sanctions.")).) Further, the Court's Order noted that arrest and imprisonment is appropriate in cases of civil contempt because "the penalty is conditional, and [stands] . . . unless and until [the contemnor] performs the affirmative act required by the court's order." (See Civil Contempt and Arrest Order, July 16, 1999, at 2 (quoting *In re Tutu Wells Contamination Litig.*, 31 V.I. 250, 162 F.R.D. 46, 64 (D.V.I. 1995)) (citations and internal quotation marks omitted).)

manner that he wished. After Attorney Sprauve presented his responses to the six separate allegations of professional misconduct delineated by the defendants in the Show Cause Order, the Court accepted his response to the sixth allegation that he "may have willfully refused to appear at a hearing on his motions scheduled for May 21, 1999,"[28] and stated that it would take the remaining allegations and responses under advisement and announce its decision on the following afternoon.[29] As that date was inconvenient for Sprauve, the Court and the plaintiff agreed to reconvene on at 9:00 a.m. on Wednesday, July 21st. The Court announced its decision on that date, as discussed below.[30]

## DISCUSSION

### A. Allegations Against the Plaintiff

Attorney Sprauve responded to the six allegations at the Show Cause hearing on Monday, July 19th. The Court will review each issue *seriatim*.

The first allegation in the Show Cause Order declared that the "[p]laintiff may have willfully misrepresented a material fact in his

---

[28] The Court gave Sprauve "the benefit of the doubt" and accepted his explanation of his condition for purposes of this sanctions proceeding because it could not begin to determine whether he actually was malingering when he failed to appear in Court on May 21st. As the plaintiff's condition in late May remains in serious dispute, however, *see supra* pages 10-11, there are no grounds to disturb the court's previous decisions. (*See* Order Denying Pl.'s Mot. for Recons., June 2, 1999.)

[29] (*See* Tr., July 19, 1999, at 29 (taking allegations, responses, and plaintiff's contention that he could not be disciplined as an attorney for his conduct as a pro se litigant under advisement).)

[30] At the close of the hearing on June 19th, Sprauve spoke as if he had concluded his response. (*See id.* at 27 ("So as you sit down and you think about what the standard ought to be for judging me based on these allegations . . . .").) When this case was called on July 21st, the Court stated that it was about to render its decision on the allegations and responses to the Show Cause Order. Sprauve made no objection as the Court announced its decision. Only after the Court concluded did the plaintiff object that he had arrived with a witness to continue his response, and that the Court had refused to allow him to present evidence and witnesses. The record reflects that the Court gave Attorney Sprauve ample opportunity to present his side of the case. Indeed, it was necessary to issue a warrant for his arrest to get him to do so. The plaintiff's surrender to the marshal after he arrived on the morning of July 19th did not prevent him from bringing documentary evidence or witnesses to Court. Similarly, nothing prevented Sprauve from advising the Court at the end of the hearing on that day, the next day, or even on the morning of the 21st, that he wished to supplement his responses. His objection was therefore baseless and untimely.

motion to set aside entry of default." (Show Cause Order at 1.) This allegation relates to Sprauve's duty of candor toward the tribunal, his duty to expedite litigation, and his duty to present only meritorious claims and defenses. *See* AMERICAN BAR ASS'N, MODEL RULES OF PROFESSIONAL CONDUCT 3.3, 3.2, 3.1 ["ABA RULE(S)"].[31]

In his motion to set aside the entry of default, Sprauve stated that he had been "unaware" of the scheduling conference set for February 11, 1999, and did not receive prompt notice of the "[d]efendants' request for default[,] which was served via the mail in three (3) days." (*See* Pl.'s Mot. to Set Aside, Feb. 19, 1999, at 1.) Yet the record shows that the defendants' attorneys mailed and faxed a letter to the plaintiff's address on February 2, 1999, that referred to this scheduling conference, (*see* Defs.' Mot. for Summ. J., May 24, 1999, Ex. J), and process server Antonio Benjamin *personally served* the plaintiff with a copy of the application for entry of default on February 9, 1999. (*See id.* Ex. F; *see also* Defs.' Sub., June 2, 1999, at 3.) Weighed against these well-substantiated facts, the plaintiff's statement that he does not recall that letter and his unsubstantiated claims that he did not have access to a facsimile machine, or that the machine was out of paper, (*see* Tr., July 19, 1999, at 5), simply are not credible. Further, Sprauve's attempt to suggest that the envelope that he received from process server Antonio Benjamin may not have contained the defendants' application for entry of default, (*see id.* at 6), bespeaks someone who is willing to say anything to avoid accepting responsibility for his actions. The Court can only conclude that Attorney Sprauve willfully made untrue statements in a pleading that he signed and filed with the Court, which false statements were material to the relief he was seeking to obtain.

The second allegation in the Show Cause Order noted that the "[p]laintiff may have willfully refused to attend his deposition

---

[31] The Rules of Professional Conduct of the American Bar Association govern the conduct of attorneys admitted to the Bar of the District Court:

> For misconduct defined in the Rules and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court, reprimanded or subject to such other disciplinary action as the circumstances may warrant.

*See* LRCi 83.2(b)(4)(A).

noticed for April 8, 1999, without sufficient justification." (Show Cause Order at 2.) This allegation implicates Sprauve's duty of fairness to the opposing party and counsel and his duty to expedite litigation. *See* ABA RULES 3.4, 3.2.

Along with their March 5th deposition notice to .Sprauve, the defendants' attorneys sent the plaintiff a letter in which they stated, "we are willing to work with you if [the April 8th] date is excessively burdensome. If you would like to discuss changing the date, just call. We'll accommodate you if possible." (*See* Defs.' Sub., June 2, 1999, at 4; *id.* Ex. B.) One day before the deposition was to take place, Sprauve replied that he could not attend the deposition: "I was subpoenaed in a criminal matter in the Territorial Court, and I do not know how many days it will last." (*See id.* Ex. C.) The record reveals that Sprauve had been subpoenaed to testify in the Territorial Court on April 7th, *not* April 8th, (*see id.* at 7, Ex. G (copy of Territorial Court subpoena)), and the plaintiff has not disputed that there is no record of any hearing on April 8, 1999, in the Territorial Court matter referred to in his letter. (*See* Tr., July 19, 1999, at 11.) Further, Sprauve has not explained how his belief that he would need to testify in Territorial Court on April 8th was reasonable or supported by facts, or why he did not move for a protective order *before* April 8th. The Court concludes that plaintiff willfully and unreasonably refused to attend his deposition scheduled for April 8, 1999.

The third allegation in the Show Cause Order stated that the "[p]laintiff may have knowingly misrepresented material facts in his filing of April 9, 1999, seeking a protective order for his failure to attend the deposition scheduled for April 8, 1999." This allegation concerns Sprauve's duty of candor toward the tribunal, his duty to expedite litigation, and his duty to present only meritorious claims and defenses. *See* ABA RULES 3.3, 3.2, 3.1.

In his motion for a protective order, Sprauve told the Court that he was unavailable to attend the April 8th deposition because he had been subpoenaed to appear in Territorial Court that day.[32] As previously indicated, no proceedings in the Territorial Court

---

[32] (*See* Pl.'s Mot. for Protective Order, Apr. 9, 1999, at 1; *see also* supra note 6 and accompanying text.)

rendered the plaintiff unavailable on April 8, 1999. Attorney Sprauve thus knowingly misrepresented a material fact to the Court in his belated motion for a protective order when he stated that he was unavailable to attend his deposition on April 8th.

The fourth allegation in the Show Cause Order stated that the "[p]laintiff may have willfully refused to attend his deposition noticed for April 28, 1999, without sufficient justification." This allegation involves Sprauve's duty of fairness to opposing party and counsel and his duty to expedite litigation. *See* ABA RULES 3.4, 3.2.

This time, Attorney Sprauve not only waited until the day before his deposition, but did not even attempt to contact the defendants' counsel until after business hours on the day before his deposition to advise them that he would not be able to attend.[33] In addition, Sprauve testified during his deposition on May 4th that he did not attend his April 28th deposition because he was pursuing a civil matter that took precedence.[34] At the Show Cause hearing, Sprauve stated that he refused to attend his second deposition because a Territorial Court law clerk had told him that the court might have time to hear his request for a temporary restraining order on April 28th. (*See* Tr., July 19, 1999, at 17.)

This "conflict" was entirely avoidable even for a sole practitioner such as Attorney Sprauve. He was under no judicial compulsion to clear his calendar; the plaintiff has not even contended that he actually appeared in Territorial Court on April 28th. Sprauve easily could have arranged to attend his deposition on the understanding that he would have to leave if the Territorial Court called for him. Yet he informed opposing counsel after business hours that he would not attend his deposition, failed to appear, and did not seek a protective order from the magistrate judge who had ordered him to appear. Attorney Sprauve willfully refused to attend his deposition noticed for April 28, 1999, without sufficient justification or leave of court.

The fifth allegation in the Show Cause Order declared that the "[p]laintiff may have knowingly misstated material facts concern-

---

[33] (*See* Defs.' Sub., June 2, 1999, Ex. F (Letter from Wayne L. Sprauve to Frederick G. Watts (Apr. 27, 1999)); *see also supra* pages 5-6.)

[34] (*See* Dep. of Wayne L. Sprauve, May 4, 1999, at 12; *see also supra* page 7.)

ing his reasons for not attending his deposition scheduled for April 8, 1999, during sworn testimony at his deposition held May 4, 1999." This allegation pertains to Sprauve's duty of candor toward the tribunal, his duty to expedite litigation, and his duty to present only meritorious claims and defenses. *See* ABA Rules 3.3, 3.2, 3.1.

During his deposition on May 4th, Sprauve testified that he had been subpoenaed to appear in Territorial Court on April 8th.[35] As the Court already has explained, this statement was false. Further, the plaintiff repeated under oath what he had suggested to the Court in his April 9th motion for a protective order, that this subpoena rendered him unable to attend his deposition. Attorney Sprauve willfully and knowingly made material misrepresentations about his reasons for not attending his deposition scheduled for April 8, 1999, by lying under oath during sworn testimony at his deposition when it finally took place on May 4, 1999.

## B. Appropriate Sanction

The foregoing facts clearly and convincingly illustrate that Attorney Wayne L. Sprauve has engaged in a persistent pattern of deceit and delay throughout this litigation in violation of his duty of candor toward this Court, his duty to expedite litigation, his duty to present only meritorious claims and defenses, and his duty of fairness to opposing parties and counsel, as codified by the American Bar Association's Rules of Professional Conduct.

There can be little doubt that the plaintiff has consistently failed to behave responsibly as an officer of the District Court of the Virgin Islands during this litigation, and has refused to recognize or comply with the rules of professional conduct, much less acknowledge that he has done anything wrong. Indeed, Attorney Sprauve prefers to characterize the Court's insistence that he abide by its rules and the rules of professional conduct as harassment or the product of animus or partiality,[36] stating that, "[i]f the Court

---

[35] (*See* Dep. of Wayne L. Sprauve, May 4, 1999, at 8-9; *see also supra* note 9 and accompanying text.)

[36] Notable in this regard was Attorney Sprauve's accusation, made after the Court announced its decision on July 21, 1999, that the appearance of one the Court's former law clerks, William J. Glore, Esquire ["Glore"], as an attorney for the defendants somehow rendered the Court incapable of fairly deciding this case. The simple facts are

feels that it is incapable or unwilling to deal with me, and it believes that I should somehow not conduct my business in the District Court, I will be willing to do that." (*See* Tr., July 19, 1999, at 28.)

██ The Court will accept Sprauve's invitation that he not practice law in the District Court, but not for the reasons that he has invented. Rather, it will disbar the plaintiff because he conducts his solo practice as if his license to practice law permits him to ignore his duties to the Court and his fellow attorneys. Most significantly, Sprauve's conduct in this litigation gives the Court no reason to believe that a suspension from practice at the District Court or any other sanction would impel him to uphold the honorable oath that he undertook to "demean [him]self as an Attorney At Law of this Court, uprightly and according to law," or to conform his conduct to the Court's rules in the future. The plaintiff is liable as an attorney for his conduct under the rules of professional responsibility adopted by the District Court.[37] Conse-

---

that Attorney Glore's ten-month tenure at the District Court ended in September, 1998, well before Attorney Sprauve filed this action in the Territorial Court or the defendants removed it to the District Court. Furthermore, Glore scrupulously has abided by the rules of professional conduct by not appearing in any matter he worked on as law clerk, and there is no indication that he has worked as a private attorney in any case that he was assigned to during his clerkship. *See, e.g.*, Court File, *Morcher v. Nash*, Civ. No. 1997-124 (D.V.I. St. Thomas & St. John div.); *cf.* ABA RULE 1.11 ("Successive Government and Private Employment"). His employer, the four-attorney law firm of Watts & Benham, P.C., certainly has not received the bounty of this supposed prejudice in other proceedings. *See, e.g.*, *Morcher v. Nash*, 39 V.I. 408, 26 F. Supp. 2d 758 (D.V.I. 1998) (assessing sizable attorneys' fees against party represented by that firm). Glore's appearance as counsel in this case can give no basis for any appearance of impropriety. The record is clear that the Court entered summary judgment against the plaintiff on the merits.

[37] Contrary to the plaintiff's assertions at bar on July 19, 1999, he cannot immunize himself from sanctions related to his status as an attorney merely because he signed his pleadings "plaintiff pro se." The plaintiff is an attorney whenever he appears before the Court, the public, or the mirror. *See* LRCi 83.2(b)(4)(B) ("An act or omission by an attorney admitted to practice before this court, individually or in concert with any other person or persons, which violates the applicable Rules of Professional Conduct . . . shall constitute misconduct and be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship."); *see also Somers v. Statewide Grievance Comm.*, 245 Conn. 277, 715 A.2d 712, 718-20 (Conn. 1998) (concluding that duty of fairness to opposing party and counsel applies even when attorney appears pro se, for "an attorney who acts in contravention of the rule cannot justify that conduct on the basis that it was intended to benefit himself or herself rather than a client"); *Runsvold v. Idaho State Bar*, 129 Idaho 419, 925 P.2d 1118, 1119-20 (Idaho 1996)

quently, an Order disbarring plaintiff Wayne L. Sprauve, Esquire, from the Bar of the District Court is attached.

ENTERED this 12th day of August, 1999.

## ORDER

For the reasons carefully and comprehensively delineated in the Court's Memorandum Opinion of even date, it is hereby

ORDERED that the plaintiff, Wayne L. Sprauve, Esquire, is DISBARRED from the Bar of the District Court of the Virgin Islands, and the Clerk of Court is DIRECTED to STRIKE his name from the rolls. This Order is effective NUNC PRO TUNC to July 21, 1999, and the plaintiff shall have *sixty* days from that date to arrange for substitution of counsel in any District Court case in which he has filed a notice of appearance.

---

(acknowledging that "a pro se lawyer/litigant does represent a client," namely, "himself/herself").